## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| **ROBERT L PARK,** | ) |
|                    **Plaintiff,** | ) |
| **v.** | ) |
| | )    **Case No. 06-2197** |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
|                    **Defendant.** | ) |

# REPORT AND RECOMMENDATION

In June 2006, Administrative Law Judge David W. Thompson (hereinafter "ALJ") denied social security disability insurance benefits (hereinafter "DIB") to Plaintiff Robert L. Park. The ALJ based his decision on findings that although Plaintiff suffered from a severe back impairment and did not retain the capability to perform past relevant work as a security guard or data entry clerk, he remained capable of performing several semi-skilled light work jobs that existed in significant numbers in the national economy.

In October 2006, Plaintiff filed a Complaint (#1) against Defendant Michael Astrue[1], the Commissioner of Social Security, seeking judicial review of the final decision by the Commissioner of the Social Security Administration (hereinafter "SSA") denying DIB. In April 2007, Plaintiff filed a Motion for Summary Judgment (#9) and in May 2007, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#11). After reviewing the administrative records and the parties' memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment **(#9)** be **DENIED**.

---

[1]Michael Astrue became Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he was substituted for Jo Anne Barnhart as Defendant in this suit.

# I. Background

## A. Procedural Background

Plaintiff applied for DIB in September 2003 under the Social Security Act. (R. 14.) In his application, Plaintiff stated that he became disabled on September 22, 2003, citing a heart condition, right shoulder pain, and back pain. (R. 14.) The claim was rejected initially and again on reconsideration by the Regional Commissioner in March 2004. (R. 35-38, 40-41.) Plaintiff then requested a hearing before the ALJ, which took place in May 2006. (R. 54.) The ALJ issued an unfavorable decision in June 2006, denying Plaintiff's claim on the basis of his ability to perform light semi-skilled work available within the national economy. (R. 14-18.) Plaintiff then filed for review with the Appeals Council, which was denied, thereby affirming the decision of the ALJ. (R. 6-8.) Plaintiff timely commenced this appeal pursuant to 42 U.S.C. § 405(g).

## B. Plaintiff's Medical Background

At the time of his alleged onset date, Plaintiff was 50 years old. *See* (R. 19.) Plaintiff had completed high school and had previously worked as a security guard and data entry clerk. (R. 14.)

### 1. Back Pain

Plaintiff began seeing Dr. Bipin Bavishi in November 2001 regarding his back pain. (R. 179.) Dr. Bavishi diagnosed Plaintiff with a possible herniated lumbar disk at L4-5. (R. 179.) Dr. Mary Gindi gave Plaintiff steroid epidurals in September 2002. (R. 184.)

In November 2002, Dr. Richard Rak, a neurosurgeon, examined patient. Dr. Rak diagnosed Plaintiff with a herniated disc and performed surgery to repair the disc. (R. 228-32.) Following the surgery in December 2002, Dr. Rak stated that Plaintiff should increase his activities but that he was "essentially disabled because of his heart condition [and that] it is probably true that he is not going to get back to work." (R. 225.) Dr. Rak stated that Plaintiff's back condition was "one more thing that would prevent him from working" and that the ramifications of his surgery "coupled with his heart disease" would make it "difficult for him to

do most jobs." (R. 225-26.)  Finally, he stated that Plaintiff "may have trouble sitting for long periods of time." (R. 226)

Since then, Plaintiff has continued to report back pain while at doctor appointments and receive treatment with, *inter alia*, Dr. Victoria Johnson in 2003 (who noted a large L4-5 herniated disc and a small L5-S1 herniated disc) (R. 297-98), Dr. Steven Schmidt in 2004 (R. 333), and Dr. Corey Warner in November 2005 (R. 349-50).  In October 2005, Plaintiff reported to Dr. Warner that he was doing "relatively okay." (R. 358.)

### 2.  Cardiac Problems

Plaintiff was diagnosed with coronary artery disease (hereinafter "CAD") in 2001, after previously being diagnosed as having a myocardial infarction in 1997. (R. 210-16.)  Dr. Gindi treated Plaintiff for CAD in June 2002. (R. 207-08.)  In September 2003, cardiologist Dr. Bhaskar Patel treated Plaintiff for chest pressure. (R. 256.)   During this visit, Plaintiff refused stress testing. (R. 256.)  Two days later, Plaintiff was admitted to Covenant Medical Center in a state of emergency because of severe chest pains, mild hypertension, and high fever. (R. 258.)  He was released in three days after his chest pain subsided. (R. 258.)

In October 2005, cardiologist Dr. Malec Mokraoui examined Plaintiff for CAD. (R. 353.)  Dr. Mokraoui reported that Plaintiff had chronic stable angina, but was "doing well from the cardiac standpoint." (R. 353-55.)  In November, Dr. Mokraoui performed a stress echocardiogram and stated that Plaintiff's results were consistent with his findings of a left ventricle dysfunction at rest, prior inferior and septal myocardial infarction, and no exercise induced ischemia.  Dr. Mokraoui stated that the results were as a whole "unremarkable." (R. 341, 346-47.)

In February 2006, Plaintiff consulted Dr. Warner, who noted that Plaintiff was not in acute distress, but reported that he suffered occasional significant palpitations. (R. 341-42).  He noted that Plaintiff may have arrhythmia and may need an ablation.  He instructed Plaintiff to follow up in four weeks.

### 3. Shoulder Problems

At his May 2006 appointment with orthopedist Dr. Michael Wagner, Plaintiff reported shoulder pain. (R. 388.) Dr. Wagner gave him an injection for the pain and suggested a home exercise program. (R. 390.) A week later, after Plaintiff had an MRI, Dr. Wagner indicated that the MRI showed a moderate degree of degenerative changes in Plaintiff's shoulder and rotator cuff tendinitis, but no sign of rotator cuff tear. (R. 388.) He noted that Plaintiff said the arm was feeling better, prescribed a home exercise program, and indicated that he would see Plaintiff as needed, at which point surgery may be required. (R. 388).

### 4. Agency Doctors

In October 2002, Dr. James Graham reviewed the record and concluded that Plaintiff could occasionally lift up to twenty pounds, frequently carry up to ten pounds, stand or walk about six hours in an eight-hour day, sit for about six hours in an eight-hour day, engage in unlimited pushing or pulling, not climb ladders, ropes or scaffolds, and not withstand concentrated exposure to extreme cold, wetness, humidity, and hazards. (R. 241-47.)

In December 2003, Dr. Henry Rohs reviewed the record and concluded that Plaintiff could occasionally lift up to twenty pounds, frequently carry up to ten pounds, stand or walk about six hours in an eight-hour day, sit for about six hours in an eight-hour day, engage in unlimited pushing or pulling, not climb ladders, ropes or scaffolds, occasionally engage in climbing, balancing, stooping, kneeling, crouching, and crawling, and not withstand concentrated exposure to extreme cold, wetness, humidity, and hazards. (R. 310-17.)

### 5. ALJ Hearing

In May 2006, at the hearing before the ALJ, Plaintiff testified as to his impairments. Plaintiff testified that he could stand for five minutes, only walk around the house, lift about four pounds, sit for up to five to ten minutes before having to stand, and drive about ten to fifteen miles a week to go to doctor appointments or the grocery store. (R. 404-27.) Plaintiff mentioned his back and heart problems but did not mention his shoulder pain during the hearing. (R. 404-27.)

Next, vocational expert Dennis Gustafson (hereinafter "VE") testified, based on the record, which he studied, and the testimony, which he witnessed. The VE concluded that Plaintiff's prior work experience as a security guard was considered semi-skilled light work, and as a data entry clerk was considered semi-skilled sedentary work. (R. 428.) The VE stated that an individual capable of light work with occasional postural limitations would be able to perform Plaintiff's past relevant work. (R. 429.) The VE next testified that an individual with a sedentary exertional level with occasional postural limitations would not be able to perform Plaintiff's past relevant work. (R. 429.) However, the VE testified that such a person would be able to perform a number of jobs that include a sit/stand option that exist in significant numbers in the national economy: office clerk, parimutuel ticket checker, interviewer, order clerk, and receptionist and information clerk. (R. 430.)

### C. ALJ's Findings and Decision

In determining whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must proceed through a five-step analysis. 20 C.F.R. § 416.920(a)-(f). The Commissioner must determine in sequence: (1) whether the claimant is currently employed (or was during the relevant period); (2) whether she had a severe impairment; (3) whether the impairment met or equaled one listed by the Commissioner; (4) whether the claimant could have performed her past work; and (5) whether the claimant was capable of performing any work in the national economy. *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992). Once the claimant has satisfied the first two steps, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment, but cannot perform her past work, the burden shifts to the Commissioner to show that the claimant can perform some other job. *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995).

The ALJ made the following findings that bore on his decision: (1) Plaintiff had not engaged in substantial gainful activity since September 2003; (2) Plaintiff's lumbar stenosis (which caused his back pain) constituted a severe impairment; (3) Plaintiff did not have an impairment or a combination of impairments that met or equaled one of the listings; (4) Plaintiff's testimony as to the extent of his limitations was not credible; (5) Plaintiff was

capable of light work requiring only occasional climbing, balancing, stooping, kneeling, crouching or crawling; (6) Plaintiff retained skills transferrable to other semiskilled work; (7) Plaintiff was not able to perform his past relevant work as a security guard or data entry clerk; (8) however, there were a significant number of jobs in the national economy which Plaintiff could perform; (9) thus, Plaintiff was not under a disability at any relevant time. (R. 17-18.)

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case de novo or replace the ALJ's finding with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Social Security Commissioner as to any fact are conclusive where that finding is supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether Plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz*, 55 F.3d at 306. The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether Plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Brooks v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

In order for this Court to find that substantial evidence supports the ALJ's ruling, the ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). This requires the ALJ to sufficiently articulate her evaluation of the evidence so that the Court may assure itself that the ALJ considered all important evidence and also so that the Court can properly follow the ALJ's reasoning. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). The ALJ is not, however, required to conduct a written evaluation of every piece of evidence. *Id.*

Where an ALJ's credibility determination is at issue, the Court gives considerable deference to the ALJ's findings and will not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992);

*Kelley v. Sullivan*, 890 F.2d 961, 965 (7th Cir. 1989). However, when a credibility determination rests on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review the ALJ's credibility determination. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

### III. Analysis

Plaintiff posits the following points of error by the ALJ in his decision that warrant reversal: (1) the ALJ failed to accord the proper weight to Dr. Rak's opinions; (2) the ALJ mischaracterized Plaintiff's cardiac and shoulder impairments as nonsevere; and (3) the ALJ did not consider Plaintiff's cardiac and shoulder impairments in determining his residual functional capacity (hereinafter "RFC").

### A. Weight Given to Dr. Rak's Opinion

Plaintiff first argues that the ALJ incorrectly discredited the opinions of Dr. Rak. In particular, Plaintiff contends that the ALJ should have given certain of Dr. Rak's opinions more weight, including (1) Dr. Rak's December 2002 note, which states that Plaintiff's back condition and heart disease make him "essentially disabled," make it "difficult for him to do most jobs," would limit him to work that is "relatively sedentary," and may cause him "trouble sitting for long periods of time" (R. 225-26); and (2) Dr. Rak's October 2004 note, which states that Plaintiff is "really incapacitated by his pain" (R. 364).

In general, controlling weight will be assigned to a medical opinion when: (1) the opinion comes from a treating source; (2) the opinion is a medical opinion; (3) the opinion is "well-supported"; (4) and the opinion is "not inconsistent" with other "substantial" evidence on record. SSR 96-2p. Some opinions within a single document may be controlling while others may not. *Id*. Treating source opinions over issues reserved to the Commissioner are never given controlling weight. SSR 96-5p at 2.

Even when a medical opinion is found to be well supported, it must still be "not inconsistent" with the other evidence on record before it is given controlling weight. SSR 96-2p

7

at 2; *see* 20 C.F.R. § 404.1527(d)(2). The ALJ must conduct a thorough examination of all the medical evidence on record to determine whether there is any inconsistent medical evidence. *See Barnett v. Barnhart,* 381 F.3d 664, 669 (7th Cir. 2004) (remanding where the explanation ignored or misconstrued significant parts of the medical record). If an ALJ has not correctly indicated the discrepancy or her reasons for rejecting an opinion, the error would be harmless if the record contains evidence to support her finding. *See Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (holding that no remand is required unless the ALJ would be expected to reach a different conclusion).

Plaintiff contends that the ALJ erred by discrediting the opinions of treating sources without specifying which physician or which opinion and criticizes the ALJ for making a blanket statement that he would not give controlling weight to the opinions of treating sources because "the opinions are not consistent with the evidence and credibility factors detailed throughout this decision." (R. 17.) However, the only treating physician opinions that Plaintiff addresses are those of Dr. Rak.

Earlier in his decision, the ALJ discussed the results, if not the specific language, of Plaintiff's appointments with Dr. Rak. (R. 15-16). In examining this treatment as to each of Dr. Rak's opinions, the Court will consider first if the ALJ's reasoning was adequate, and if not, whether more thorough analysis might result in a differing outcome.

Dr. Rak's December 2002 note contains four separate opinions that Plaintiff contends were incorrectly dismissed. The first is Dr. Rak's statement that Plaintiff is "essentially disabled." Under SSR 96-5p, a doctor's opinion about whether a patient is "disabled" is never given controlling weight. SSR 96-5p at 5. It is a legal conclusion, not a medical one, to be determined by the ALJ. *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir. 1989). Thus, Dr. Rak's first opinion did not warrant controlling weight.

Dr. Rak's opinion that Plaintiff's impairments would "make it difficult to do most jobs" is similarly undeserving of controlling weight. This opinion is arguably inconsistent with the

opinions of the state agency physicians to the extent that their RFC findings indicated Plaintiff could perform "most jobs." (R. 241-47, 310-17.) Morever, even if the ALJ had afforded Dr. Rak's statement controlling weight, the regulations do not require a claimant to be able to perform "most jobs." *See* 20 C.F.R. § 404.1566. Therefore, this opinion would not have changed the outcome. As a result, the opinion of Dr. Rak that Plaintiff would find it "difficult to do most jobs" is either inconsequential or not worthy of controlling weight and the ALJ did not err by discounting it.

The ALJ also did not err by declining to afford controlling weight to the opinions in Dr. Rak's December 2002 note that Plaintiff's impairments would limit him to relatively sedentary work and that he would have "trouble sitting for a long period of time." These statements were apparently based on Plaintiff's subjective complaints of pain, which the ALJ determined were not credible. *Cf. Rice v. Barnhart*, 384 F.3d 363, 370-71 (7th Cir. 2004). Furthermore, the ALJ discussed at length Plaintiff's purported inability to sit or stand for long periods when he addressed Plaintiff's credibility. He found Plaintiff's reports of difficulty with sitting to be not credible and Plaintiff has not challenged that finding. Thus, the ALJ did not err by rejecting those opinions altogether (thereby giving them *no* weight). *See Diaz*, 55 F.3d at 307-08.

Even if these statements were deemed to be well supported, they were inconsistent with the state agency physicians' RFC assessments dated December 2003 and October 2002. Both indicated that Plaintiff was capable of light work and was able to sit for about six hours in an eight-hour workday. In addition, Plaintiff's report to Dr. Warner in October 2005 that he was "okay" provides further evidence of inconsistency. Because these statements are not well supported and they are inconsistent with the record, Dr. Rak's opinions regarding sedentary work and Plaintiff's ability to sit are not entitled to controlling weight.

Finally, Dr. Rak's October 2004 note, which indicated that Plaintiff is "really incapacitated by his pain" is similarly not entitled to controlling weight. Again, this statement appears to be based on Plaintiff's subjective complaints. The ALJ acknowledged that the record

provided some support for Plaintiff's claims of pain (R. 14), but determined that the medical evidence did not support his claimed symptoms to the degree alleged by Plaintiff (R. 16). Moreover, this statement is inconsistent with the aforementioned evidence on record. Therefore, the ALJ did not err by failing to give this statement controlling weight.

Even if the ALJ had in fact given controlling weight to Dr. Rak's opinions, with the exception of the "essentially disabled" comment (which would usurp the ALJ's final authority), those opinions would have had no impact on the ultimate outcome. In his testimony, the VE listed sedentary jobs that had a sit/stand option, thereby ameliorating the concerns raised by Dr. Rak's opinions that Plaintiff should be limited to sedentary work and would have trouble sitting for a long period of time.

Although the ALJ could have provided a more thorough explanation of his reasoning, his failure to do so did not result in any undue harm to Plaintiff. Ultimately, "[no] principle of administrative law or common requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher*, 869 F.2d at 1057. Accordingly, the Court concludes that the ALJ did not err by failing to give Dr. Rak's opinions controlling weight.

Even if Dr. Rak's opinions do not merit controlling weight, the ALJ must consider them in determining Plaintiff's RFC. The Court will consider this issue in greater depth below.

### B. Plaintiff's Cardiac Condition and Shoulder Impairments

Plaintiff next argues that the ALJ erred by finding his cardiac condition and shoulder impairments to be nonsevere and failing to include them in his determination of Plaintiff's RFC. The Court views this argument as a challenge to the ALJ's step two severity finding and steps four and five RFC findings.

#### 1. Step Two

Step two requires a claimant to show either a severe medical impairment or a

combination of impairments that is severe. 20 C.F.R. § 404.1509(a)(4)(ii). In essence, step two is a threshold question. *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999)

To the extent that Plaintiff is challenging the ALJ's finding at step two, his argument has no merit. At step two the ALJ found in *favor* of Plaintiff, by finding that he had a severe impairment. Thus, regardless of the ALJ's findings on Plaintiff's back and shoulder impairments at this stage, Plaintiff has not suffered any injury as a result of the ALJ's conclusion that his cardiac condition and shoulder impairments constituted nonsevere conditions.

### 2. Steps Four and Five RFC Determination

The ALJ must base his determination of a claimant's RFC on the relevant medical evidence. SSR 96-2p. An ALJ must explain and support how she determined a claimant's limitations in formulating an RFC. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). Although the ALJ is not required to list and evaluate the merits of every single piece of evidence before her, *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995), the ALJ cannot selectively overlook evidence that conflicts with her ultimate conclusion. *Herron*, 19 F.3d at 333. Once a medical opinion is determined to be noncontrolling, it is equivalent to any other piece of evidence the ALJ must weigh. *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006). In general, the opinions of a treating physician carry more weight than opinions of a state agency physician. *Carver v. Harris*, 634 F.2d 363, 364 (7th Cir. 1980). Also, the contradictory opinion of a non-examining physician by itself is not an adequate reason to reject a treating physician's opinion. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

The ALJ must consider the aggregate effect of a claimant's impairments, both severe or not, in making an RFC determination. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). When presented with two differing opinions, the ALJ is required to weigh such evidence, and the Court may not reweigh the evidence on review. *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004).

"Light work" requires lifting no more than twenty pounds, with frequent lifting of up to ten pounds. 20 C.F.R. § 404.1567. Light work may include jobs that require "standing or

walking, off and on, for a total of [six] hours per day." *Haynes v. Barnhart*, 416 F.3d 621, 627 (7th Cir. 2005). "Sedentary work" requires lifting of no more than ten pounds, and involves sitting and possible occasional walking and standing. 20 C.F.R. § 404.1567. "Semi-skilled work" includes jobs that require some skill but are not particularly complex. 20 C.F.R. § 404.1568.

Substantial evidence supports the ALJ's decision that Plaintiff's shoulder and heart impairments did not limit Plaintiff's RFC. The ALJ explained and supported his determinaiton of Plaintiff's RFC, mentioning both Plaintiff's shoulder and heart conditions but giving them limited weight because of their nonseverity. In regard to the heart condition, the ALJ noted that Dr. Mokraoui reported that Plaintiff had a stable cardiac condition in November 2005. Furthermore, the ALJ noted that Plaintiff did not refer to his heart condition during the hearing. As for Plaintiff's shoulder condition, the ALJ noted Dr. Wagner's treatment of Plaintiff in May and his expectation that Plaintiff would recover. While Dr. Rak's earlier medical opinions may have contradicted these assessments, the ALJ did not err by giving more weight to the later reports. Therefore, the evidence adequately supports the ALJ's conclusion that Plaintiff's heart and shoulder conditions did not limit Plaintiff's RFC.

The ALJ's light work finding, with limitations on climbing, balancing, stooping, kneeling, crouching and crawling, is consistent with these impairments. As the ALJ noted, Plaintiff was capable of driving to the store to purchase items, an activity analogous to light work. In addition, Plaintiff presented no evidence that his skill levels had declined. Thus, the ALJ's finding that Plaintiff was capable of semi-skilled light work accommodates the degree of shoulder and back impairments that Plaintiff asserts.

Furthermore, even if his heart and shoulder conditions limited Plaintiff's physical exertional ability to a sedentary level, the VE testified that Plaintiff could perform a number of sedentary jobs with sit/stand options. The VE listed semi-skilled or unskilled sedentary jobs such as parimutuel ticket checkers, general office clerks, interviewers, order clerks, and

receptionist and information clerks.  This testimony supports the ALJ's finding that Plaintiff would still be able to find employment within the national economy, even if his RFC was limited to sedentary work.  Therefore, even if the ALJ erred, the error would be harmless.

### IV.  Summary

For the reasons set forth above, this Court recommends that Plaintiff's Motion for Summary Judgment (**#9**) be **DENIED**.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten (10) working days after being served with a copy of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 13th day of August, 2007

                                                s/ DAVID G. BERNTHAL
                                                U.S. MAGISTRATE JUDGE